ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| LUTGARDO ACEVEDO LÓPEZ I, MIGDALIA FUENTES CABÁN, LUTGARDO Y MIGDALIA- LA SOCIEDAD LEGAL DE GANANCIALES Y OTROS<br><br>Peticionaria<br><br>v.<br><br>LUTGARDO ACEVEDO LÓPEZ II, CARMEN ARROYO RODRÍGUEZ, LUTGARDO II Y CARMEN- LA SOCIEDAD LEGAL DE GANANCIALES Y OTROS<br><br>Recurrida | **TA2026CE00249** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Aguadilla<br><br>Civil Núm.: AG2023CV0000759<br><br>Sobre: Cobro De Dinero - Ordinario, Enriquecimiento Injusto |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 18 de marzo de 2026.

Comparece ante nos el Sr. Lutgardo Acevedo López I y Migdalia Fuentes Cabán (en conjunto, "parte peticionaria") y nos solicitan que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, notificada el 28 de enero de 2026. Mediante el referido dictamen, el foro primario denegó la *Moción al Amparo de la Regla 49.2 de Procedimiento Civil* presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** expedir el auto de *certiorari*.

### I.

El 16 de mayo de 2023, la parte peticionaria presentó una *Demanda* sobre cobro de dinero ordinario,

fraude en el traspaso de propiedades, dolo, engaño, fraude, y enriquecimiento injusto, en contra de Lutgardo Acevedo López II, Carmen Arroyo Rodríguez y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "parte recurrida"); Brotherhood Corp.; Pride Lands Corp.; e Infinity Tax Advisors.[1] Según surge de la demanda, en el año 1999, el señor Lutgardo Acevedo I fundó la empresa de contabilidad Lutgardo Tax Advisors, siendo la señora fuentes la directora de Recursos Humanos. Mientras que, el señor Lutgardo Acevedo II fungió como Director de Operaciones. En el año 2014, el peticionario fue encarcelado por cargos de soborno, por lo que, autorizó al recurrido a continuar administrando las empresas bajo el mando y control de la señora Fuentes.

No obstante, los peticionarios alegaron que los recurridos se aprovecharon de la situación y realizaron diversas actuaciones fraudulentas para apropiarse de las empresas y sus activos. Arguyeron que, mediante maquinaciones, frases insidiosas, amenazas y manipulaciones lograron que la señora Fuentes aceptara y consintiera a traspasar el 100% de las acciones pertenecientes a la Empresa Lutgardo, Inc. Asimismo, sostuvieron que los recurridos crearon nuevas entidades corporativas con la intención de traspasar activos y la cesión de contratos de renta de todas las localidades comerciales que tenían. Por consiguiente, los peticionaros reclamaron la nulidad de las transferencias, devolución de acciones y bienes alegadamente traspasados fraudulentamente.

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

El 16 de agosto de 2023, los recurridos presentaron una *Moción de Sentencia Sumaria y Desestimación*, la cual acompañaron de prueba documental.[2] En esencia, solicitaron la desestimación de la demanda por entender que no existían hechos esenciales y pertinentes en controversia, respecto a: (1) la falta de legitimación activa de los peticionarios y (2) la prescripción de la causa de acción. En cuanto a la falta de legitimación, señalaron que los peticionarios habían transferido el 51% de las acciones a favor de LALMFC Trust (Fideicomiso), quien no era parte del pleito. A su vez, Empresas Lutgardo Inc., carece de legitimación activa, por no estar debidamente representada por sus dueños. Finalmente, resaltaron que la causa de acción estaba prescrita y dejaba de exponer una reclamación que justificara un remedio. Esbozó que, el término de 4 años que disponía el Artículo 1253 del Código Civil, comenzó a decursar el 10 de mayo de 2017, fecha en que el LALMFC Trust y los recurridos suscribieron el Stock Transfer Agreement mediante el cual, el fideicomiso vendió el 51% de las acciones de Empresas Lutgardo, Inc. a cambio de $70,000.00, suma que recibió mediante cheque oficial, es decir, fecha en que se realizaron las prestaciones. Por lo tanto, sostuvo que el término venció el 9 de mayo de 2021, y la demanda fue presentada el 16 de mayo de 2023. Consecuentemente, solicitaron la desestimación de la demanda.

Por su parte, el 20 de octubre de 2023, los peticionarios presentaron su *Moción en Oposición a*

---

[2] *Moción de Sentencia Sumaria y Desestimación*, entrada núm. 21 en SUMAC.

*Solicitud de Sentencia Sumaria*.[3] En esta, sostuvieron que existían hechos materiales en controversia que impedían la adjudicación sumaria del caso. En síntesis, alegaron que la titularidad de las acciones de Empresas Lutgardo, Inc., estaba en disputa, ya que el peticionario tenía en su posesión el libro de acciones que contiene el 100% de las acciones. A su vez, que los certificados de acciones nunca fueron endosados ni entregados conforme a los requisitos establecidos en la Ley de Transacciones Comerciales. Por lo que, resaltan que, al no haberse perfeccionado dichas transferencias, ni el fideicomiso ni los recurridos adquirieron válidamente la titularidad de las acciones.

En cuanto a la prescripción de la causa de acción, arguyeron que los daños recibidos por los recurridos eran continuos y persistían hasta la fecha. Además, que advinieron en conocimiento de los actos fraudulentos el 5 de agosto de 2021. Por ello, sostuvieron que el término prescriptivo por dolo y fraude no había transcurrido.

El 25 de octubre de 2023, la parte recurrida presentó una *Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria*.[4]

El 9 de enero de 2024, fue celebrada una vista argumentativa, a la cual comparecieron los representantes legales de las partes.[5]

Evaluados los escritos, así como las argumentaciones durante la vista, el 29 de febrero de

---

[3] *Moción en Oposición a Solicitud de Sentencia Sumaria*, entrada núm. 31 en SUMAC.
[4] *Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria*, entrada núm. 33 en SUMAC.
[5] *Minuta*, entrada núm. 52 en SUMAC.

2024, el foro primario dictó *Sentencia,* en la cual formuló las siguientes determinaciones de hechos:[6]

1. Empresas Lutgardo, Inc., fue incorporada el 9 de julio de 2002, con número de registro 129040. (Anejo I, Certificado de Incorporación).

2. El 51% de las acciones de Empresas Lutgardo, Inc. pertenecía al codemandante Lutgardo I y el 49% pertenecía al codemandado Lutgardo II. (Anejo II, Stock Transfer Agreement de 7 de abril de 2011; Alegación #18 de la demanda y admisión de parte en corte abierta).

3. El 7 de abril de 2011, mediante el documento titulado: Stock Transfer Agreement, los codemandantes Lutgardo I y la señora Fuentes Cabán, dueños del 51% de las acciones de Empresas Lutgardo, Inc., transfirieron dichas acciones a LALMFC TRUST, fideicomiso creado el mismo día, 7 de abril de 2011, bajo las leyes del Estado Libre Asociado de Puerto Rico, mediante Escritura Núm. 9, ante el notario José Rafael Ramírez Ramos.

4. LALMFC TRUST (en adelante, el fideicomiso), compareció representado por su fiduciaria, Corporación de Servicios Domésticos, representada por el codemandante Lutgardo I. El precio que se estableció por el 51% de las acciones fue de un dólar ($1.00). (Anejo III, Stock Transfer Agreement de 7 de abril de 2011).

5. El 10 de mayo de 2017, mediante documento titulado: Stock Transfer Agreement, otorgado ante el notario José Rafael Ramírez Ramos, el fideicomiso LALMFC TRUST, dueño del 51% de las acciones de Empresas Lutgardo, Inc., y representado por su fiduciaria, Corporación de Servicios Domésticos, representada, a su vez, por su presidenta, Migdalia Fuentes Cabán, transfirió el 51% de las acciones de Empresas Lutgardo, Inc., a favor de los codemandados Lutgardo II y la señora Arroyo Rodríguez. El precio que se estableció por el 51% de las acciones fue de $70,000.00. (Anejo IV, Stock Transfer Agreement de 10 de mayo de 2017).

6. La Corporación de Servicios Domésticos, en representación del fideicomiso y, a través de la señora Fuentes Cabán, recibió el 10 de mayo de 2017, el cheque oficial número 4404480, por la suma de $70,000.00 por la

---

[6] *Sentencia*, entrada núm. 53 en SUMAC.

compra de las acciones. (Anejo V, Cheque Oficial Núm. 4404480).

7. En el caso H&R Block Tax Services, LLC v. Lutgardo Acevedo López, Case No. 12-1320-CV-W-SOW, ante el Tribunal Federal del Distrito Occidental de Missouri, dicho foro dictó Orden el 5 de marzo de 2014, en la que acogió y declaró con lugar una moción de sentencia sumaria presentada por H&R Block y denegó una moción de desestimación presentada por Lutgardo I. (Anejo VI, Order)

8. Según surge de la Orden antes mencionada, el 28 de agosto de 2007, el codemandante Lutgardo I, suscribió con H&R Block un contrato - Franchise License Agreement (FLA)- mediante el cual vendió a H&R Block Tax Services LLC, por la cantidad de $700,000.00, su derecho, título e interés en todas sus listas de clientes de preparación de impuestos que poseía como Lutgardo Tax Advisors. El acuerdo incluía convertir sus oficinas de preparación de impuestos existentes en Puerto Rico a franquicias de H&R Block y le daba a Lutgardo I el derecho a operar como franquicia en sus siete (7) localidades. H&R Block otorgó al codemandante Lutgardo I, una licencia para utilizar las listas de clientes y materiales que había vendido a H&R Block en la operación de su negocio de franquicia. Lutgardo I acordó pagar una regalía a H&R calculada como un porcentaje de sus ingresos brutos por la preparación de declaraciones de impuestos y la presentación de servicios relacionados en sus ubicaciones franquiciadas. (Anejo VI, Order, pág. 2).

9. En enero de 2012, el codemandante Lutgardo I, suscribió un Contrato de Compra de Activos mediante el cual, adquirió los activos del negocio de preparación de planillas conocido como Lutgardo Too Tax Advisors, perteneciente al codemandado Lutgardo II. Bajo dicho acuerdo, Lutgardo I adquirió cuatro (4) oficinas adicionales de preparación de planillas. El 12 de enero de 2012, H&R Block, mediante un Contrato de Adquisición Asistida, le prestó $800,000.00 a Lutgardo I, para comprar las oficinas de Lutgardo Too Tax Advisors. Al firmar dicho acuerdo, Lutgardo I reconoció que las localidades, clientes, listas de clientes de Lutgardo Too Tax Advisors se regirían por el Franchise Licence Agreement (FLA), de modo que se convertirían en franquicias de H&R Block a partir de 2012. (Anejo VI, Order, págs. 3 y 4).

10. El codemandante Lutgardo I incumplió el contrato de franquicia y no pagó las cantidades adeudadas a H&R Block por lo que, el 11 de septiembre de 2012, se dio por terminado el contrato de franquicia con H&R Block. (Anejo VI, Order, pág. 5).

11. Lutgardo I incumplió con su obligación de entregarle a H&R Block los expedientes o listas de clientes y su obligación de descontinuar las operaciones de preparación de declaraciones de impuestos dentro de un radio de 25 millas de su antiguo territorio de franquicia. (Anejo VI, Order, pág. 6, párrafo 1).

12. El Tribunal Federal, entonces, ordenó lo siguiente:

   a. Que Acevedo entregue a H&R Block los materiales confidenciales y de propiedad exclusiva que estén en posesión, custodia o control de Acevedo, incluidos, ente otros, toda la información del cliente y los archivos utilizados o desarrollados en su negocio de franquicia antes del 30 de abril de 2014. (Anejo VII, Order – March 20, 2014, pág. 3).

   b. Que Acevedo y todas las personas en concierto o participación con él estén prohibidos por un periodo de dos (2) años a partir del 30 de abril de 2014 de (1) solicitar clientes anteriores de los negocios franquiciados de Acevedo, y (2) participar en la preparación comercial de declaraciones de impuestos o la prestación de servicios relacionados en o dentro de un radio de veinticinco (25) millas de su antiguo territorio de franquicia. (Anejo VII, Order – March 20, 2014, pág. 3).

   c. Que Acevedo cumpla con todas las demás obligaciones posteriores a la rescisión contenidas en sus contratos con H&R Block. (Anejo VI, Order – March 5, 2014, pág. 24).

   d. Que a H&R Block se le otorguen daños y perjuicios como resultado del incumplimiento de Acevedo de pagar las regalías adeudadas en virtud de la FLA por un monto de $531,405.46. (Anejo VI, Order – March 5, 2014, pág. 24).

   e. Que a H&R Block se le otorgue una indemnización por daños y perjuicios como resultado de la falta de pago por

parte de Acevedo en virtud del acuerdo de conciliación por un monto de $60,000. (Anejo VI, Order – March 5, 2014, pág. 24).

    f. Que H&R Block reciba una indemnización por daños y perjuicios por la falta de pago de Acevedo de $800,000 más intereses adeudados a H&R Block, en virtud del pagaré de adquisición asistida. (Anejo VI, Order – March 5, 2014, pág. 25).

    g. Que a H&R Block se lo otorguen los honorarios de abogado. (Anejo VI, Order – March 5, 2014, pág. 25).

13. El 1 de octubre de 2014, se emitió la Decisión del Tribunal Federal, que contiene las órdenes previamente esbozadas. (Anejo VIII – Judgment in a Civil Case).

14. La señora Fuentes Cabán ordenó levantar un Acta de Presencia, Instrumento Público Número 26 por el notario Kelvin Acevedo Agront el 25 de agosto de 2014. En esta ACTA se detallan los sucesos ocurridos el 20 de agosto de 2014, fecha en que le fueron entregados un disco duro externo y los expedientes de Lutgardo Tax Advisors a H&R Block, de conformidad con la Orden emitida por el Tribunal Federal para el Distrito Occidental de Missouri. (Anejo IX – Instrumento Público Número 26 sobre Acta de Presencia).

15. El 25 de junio de 2016, la señora Fuentes Cabán, notificó al Departamento del Trabajo y Departamento de Hacienda que el Negocio Lutgardo Acevedo CPA, CMA con número patronal federal 660603531, cerró operaciones durante el mes de mayo de 2014. (Anejos X y XI – cartas).

El foro primario determinó que la parte recurrida había demostrado la inexistencia de una controversia real sustancial de hechos esenciales y pertinentes. Asimismo, señaló que la parte peticionaria no presentó prueba para sostener la existencia de hechos controvertidos, ni cumplió con su obligación de contestar de forma detallada y específica su oposición. A esos efectos, concluyó que los peticionarios carecían de legitimación activa para presentar la demanda y

solicitar remedio alguno. A su vez, que la causa de acción estaba prescrita y dejaba de exponer una reclamación que justificara la concesión de un remedio. Por consiguiente, declaró *Con Lugar* la *Moción de Sentencia Sumaria* presentada por la parte recurrida; y desestimó con perjuicio la demanda instada por la parte peticionaria.

En desacuerdo, el 15 de marzo de 2024, la parte peticionaria presentó una *Solicitud de Reconsideración a Sentencia Sumaria*.[7] No obstante, el 17 de abril de 2024, el foro primario notificó una *Resolución* en la que declaró *Sin Lugar* la moción de reconsideración.[8]

Posteriormente, un año y ocho meses después, el 7 de noviembre de 2025, la parte peticionaria presentó una *Moción al Amparo de la Regla 49.2 de Procedimiento Civil*.[9] En esta, alegó que la sentencia emitida por el foro primario era nula, debido a falta de parte indispensable. Señaló que, el Fideicomiso LALMFC Trust no fue parte en el pleito, cuando debió y tenía que ser parte. Añadió que, los beneficiarios del Fideicomiso eran menores de edad al momento de la transacción de enajenación de las acciones corporativas y propiedades, por lo que, se requería de su autorización judicial para llevar a cabo dicha enajenación.

Por su parte, el 26 de noviembre de 2025, los recurridos presentaron su *Moción en Cumplimiento de Orden y Petición de Honorarios por Temeridad*.[10] En esencia, arguyeron que no procedía el relevo de la

---

[7] *Solicitud de Reconsideración a Sentencia Sumaria*, entrada núm. 54 en SUMAC.
[8] *Resolución*, entrada núm. 62 en SUMAC.
[9] *Moción al Amparo de la Regla 49.2 de Procedimiento Civil*, entrada núm. 63 en SUMAC.
[10] *Moción en Cumplimiento de orden y Petición de Honorarios por Temeridad*, entrada núm. 65 en SUMAC.

sentencia ya que no existía fundamento alguno para dejarla sin efecto. Esbozaron que, la parte peticionaria conocía sobre la existencia del fideicomiso, era el agente especial de la corporación fiduciaria, tuvieron el tiempo suficiente y razonable para traer al fideicomiso y aun así luego de dictada la *Sentencia* no actuaron diligentemente para cumplir con las reglas de procedimiento, reconsideración o apelación de la *Sentencia*. Así mismo, solicitaron se tomara conocimiento judicial del caso AG2024CV01852, donde el foro primario en dicho caso determinó que los menores no eran parte indispensable.[11] Por lo tanto, solicitaron fuera denegada la moción instada por la parte peticionaria y concediera honorarios por temeridad.

Evaluadas las mociones, el 28 de enero de 2026, el foro primario notificó una *Resolución*, en la cual declaró *No Ha Lugar* a la moción presentada por los peticionarios.[12]

Inconforme, el 27 de febrero de 2026, la parte peticionaria presentó el recurso de epígrafe en el que planteó los siguientes señalamientos de error:

> 1. Error, inadvertencia, sorpresa o negligencia excusable.
>
> 2. Erró el Honorable Tribunal al no declarar Con Lugar la Moción Bajo la Regla 49.2 de reabrir el caso y dejar sin efecto la Sentencia dictada.
>
> 3. Nulidad de la Sentencia.

---

[11] En el caso AG2024CV01852, el tribunal determinó mediante *Resolución* del 10 de noviembre de 2025 lo siguiente: "[c]on el beneficio de las mociones de ambas partes ante sí, este tribunal determina que los menores no son fideicomisarios del fideicomiso y que aun siéndolo el fiduciario tenía la potestad otorgada por el fideicomiso de disponer de los bienes y se resuelve que procede la reconsideración de la Resolución dictada el día 14 de mayo de 2025 por este tribunal se reafirma en Resolución dictada el 8 de octubre de 2025 y se declara Ha Lugar la Moción de Reconsideración presentada por la parte demandante día 9 junio de 2025."
[12] *Resolución*, entrada núm. 67 en SUMAC.

4. Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia por ser contraria a Derecho.

El 4 de marzo de 2026, emitimos una *Resolución*, en la cual le concedimos a la parte recurrida el término de quince días para que se expresaran sobre los méritos del recurso.

No obstante, habiendo transcurrido el término concedido para expresarse con relación al recurso de la parte peticionaria, procedemos a disponer del caso de epígrafe sin el beneficio de la comparecencia de la parte recurrida.

**II.**

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. *Íd.*, pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción." *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. *Íd.*, pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un certiorari no es absoluta. *Íd.* Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción.

*Íd.* Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad." *Íd.*

Es importante destacar que, al interpretar la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, nuestro Tribunal Supremo resolvió que

> [l]as resoluciones atinentes a los asuntos post-sentencia, como la que tenemos ante nuestra consideración, no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso. *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 339 (2012).

Establecido lo anterior, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto post-sentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

### III.

En el caso de autos, la parte peticionaria presentó cuatro (4) señalamientos de error, los cuales procedemos a discutir en conjunto por estar relacionados entre sí. En esencia, alega que incidió el foro primario al denegar su moción al amparo de la Regla 49.2 de Procedimiento Civil. Sostiene que, el contrato objeto de controversia adolece de nulidad debido a la violación de los derechos de los menores beneficiarios del fideicomiso. Asimismo, menciona que existen circunstancias adicionales que justifican conceder el remedio de relevo de sentencia,

por tratarse de una decisión que, según alegan, es contraria en derecho.

No obstante, luego de evaluar el recurso de epígrafe, a la luz de la totalidad del expediente, y a los criterios que emanan de la Regla 40 de nuestro Reglamento, *supra*, no surge que el foro primario haya actuado con parcialidad, que incurriera en abuso de discreción o que emitiera un dictamen contrario a derecho. En vista de lo anterior, no hallamos razón alguna para variar el dictamen recurrido.

## IV.

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el auto de *certiorari* solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones